FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 0 1 2024

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Letitia A. Sikes
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:24-CR-02045-MKD |
| Plaintiff, | |
| v. | Fed. R. Crim. P. 11(c)(1)(C) Plea Agreement |
| ANTONIO RAMIREZ SANCHEZ (a/k/a "Santiago Rojas Rangel," Jorge Navarrete-Negrete," "Charapo") | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Letitia A. Sikes, Assistant United States Attorney for the Eastern District of Washington, and Defendant Antonio Ramirez Sanchez ("Defendant"), both individually and by and through Defendant's counsel, Federal Defender Paul E. Shelton, agree to the following Fed R. Crim. P. 11(c)(1)(C) Plea Agreement ("Plea Agreement").

1.    <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to Counts 1 – 4 of the Indictment filed on June 11, 2024, which charges Defendant with four counts of Distribution of 50 Grams or More of Pure (Actual) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), a Class A felony.

PLEA AGREEMENT - 1

Defendant understands that the following potential penalties apply to each of counts 1-4:

      a.    a term of imprisonment of not less than 10 years and up to a lifetime;

      b.    a term of supervised release of not less than 5 years and up to a lifetime;

      c.    a fine of up to $10,000,000;

      d.    restitution; and

      e.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

      a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

      b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

      c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

3.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject any recommendations made herein. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

PLEA AGREEMENT - 2

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea, except as set forth in Section 7 of this Agreement.

4.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

      a.    the right to a jury trial;

      b.    the right to see, hear and question the witnesses;

      c.    the right to remain silent at trial;

      d.    the right to testify at trial; and

      e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    Denial of Federal Benefits

Defendant understands that by entering this plea of guilty, Defendant may no longer be eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan,

PLEA AGREEMENT - 4

1 professional license, or commercial license provided by an agency of the United

2 States or by appropriated funds of the United States. 21 U.S.C. § 862.

3      7.    Rule 11 Nature of the Plea Agreement

4      Defendant acknowledges that this Plea Agreement is entered into pursuant to

5 Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to

6 Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate

7 disposition of the case is 120 months to 151 months in custody, to be followed by

8 five (5) years of Supervised Release. The United States will argue for 151 months

9 in custody; Defendant will argue for any sentence within the agreed-upon range.

10 In the Indictment filed June 11, 2024, the United States provided notice of its

11 intention to seek enhancement under 21 U.S.C. § 851 due to Defendant's prior

12 conviction of a serious drug felony as defined by 21 U.S.C. §502(57). ECF No. 1,

13 p. 3. Pursuant to this Plea Agreement, the United States agrees to waive this

14 enhancement which reduces the mandatory minimum sentence from 15 years (180

15 months) to 10 years (120 months). Although the United States and Defendant

16 agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C),

17 Defendant acknowledges that no promises of any type have been made to

18 Defendant with respect to the sentence the Court will ultimately impose.

19      Defendant understands that Defendant may withdraw from this Plea

20 Agreement if the Court imposes a term of imprisonment of greater than 151

21 months or indicates its intent to do so. Defendant also understands that the United

22 States may withdraw from this Plea Agreement if the Court imposes a term of

23 imprisonment of less than 120 months or a term of supervised release of less than 5

24 (5) years, or indicates its intent to do so.

25      The United States and Defendant acknowledge that the imposition of any

26 fine, restitution, or conditions of Supervised Release are not part of the Rule

27 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant

28 are free to make any recommendations they deem appropriate as to the imposition

PLEA AGREEMENT - 5

of fines, restitution, or conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and both the United States and the Defendant are no longer bound by any representations within it.

8.    <u>Admissibility of Facts and Prior Statements</u>

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal proceeding, including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A), unless he successfully moves to withdraw from the Agreement after the Court rejects the parties' sentencing recommendations as set forth in Section 7 above.

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to any facts Defendant admits and/or any statements Defendant makes in court, unless he successfully moves to withdraw from the Agreement after the Court rejects the parties' sentencing recommendations as set forth in Section 7 above.

PLEA AGREEMENT - 6

9.    <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Distribution of 50 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), the United States would have to prove the following beyond a reasonable doubt.

          a.    *First*, on or about February 21, 2024, and on or about February 29, 2024, and on or about March 26, 2024, and on or about May 13, 2024, within the Eastern District of Washington, Defendant did knowingly and intentionally distribute methamphetamine, a Schedule II controlled substance; and

          b.    *Second*, Defendant knew the substance was methamphetamine or some other federally controlled substance; and

          c.    *Third,* Defendant distributed 50 grams or more of actual (pure) methamphetamine.

10.    <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

On four separate occasions in Yakima, Washington, located within the Eastern District of Washington, Defendant sold methamphetamine to a confidential source. All transactions were audio- and video-recorded. Most communications were translated from Spanish language (original) to English by the Utah Translation and Analysis Center (UTAC). Forensic chemists at the Drug

PLEA AGREEMENT - 7

1  Enforcement Administration's ("DEA") Western Laboratory weighted and tested
2  the suspected methamphetamine; all samples tested positive and functionally pure.

3      Following information that an individual named "Charapo" (Defendant)
4  was selling methamphetamine, DEA agents opened an investigation, quickly
5  identifying "Charapo" as an individual known to him as "Antonio Ramirez
6  Sanchez." Defendant was recognized by one of the agents from a previous
7  narcotics investigation of which he was convicted on December 19, 2016 (Delivery
8  of a Controlled Substance, Methamphetamine (two counts) in Yakima County
9  Superior Court Case No. 16-1-01598-39). The first controlled purchase took place
10 on February 21, 2024. Following security and confidence protocols, DEA agents
11 fitted a confidential source with an audio- and video- recorder as well as a GPS
12 recorder and transmitter, capturing a transaction in which Defendant sold the
13 confidential source approximately one (1) pound of methamphetamine for
14 $1300.00 USD. The suspected methamphetamine was photographed and was
15 submitted for testing. On February 26, 2024, a forensic chemist for the DEA
16 Western Laboratory generated a report in which the methamphetamine was
17 determined to be 100% pure (+/– 7%) for a net weight of 453.6 grams (+- 0.2 g.).

18     On February 29, 2024, a second controlled purchase took place. As with the
19 previous transaction, following customary security and confidence protocols, DEA
20 agents fitted a confidential source with an audio- and video- recorder as well as a
21 GPS recorder and transmitter, capturing a transaction in which Defendant sold the
22 confidential source approximately two (2) pounds of methamphetamine for $2600
23 USD. The suspected methamphetamine was photographed and was submitted for
24 testing. On March 5, 2024, a forensic chemist for the DEA Western Laboratory
25 generated a report in which the methamphetamine was determined to be 98% pure
26 (+/– 7%) for a net weight of 893.3 grams (+- 0.2 g.).

27     On March 26, 2024, a third controlled purchase took place. As with the
28 previous transaction, following customary security and confidence protocols, DEA

PLEA AGREEMENT - 8

agents fitted a confidential source with an audio- and video- recorder as well as a GPS recorder and transmitter, capturing a transaction in which Defendant sold the confidential source approximately two (2) pounds of methamphetamine for $2600 USD. The suspected methamphetamine was photographed and was submitted for testing. On April 2, 2024, a forensic chemist for the DEA Western Laboratory generated a report in which the methamphetamine was determined to be 100% pure (+/– 7%) for a net weight of 900.00 grams (+- 0.2 g.).

On May 13, 2024, a fourth and final controlled purchase took place. As with the previous transaction, following customary security and confidence protocols, DEA agents fitted a confidential source with an audio- and video- recorder as well as a GPS recorder and transmitter, capturing two transactions in which Defendant sold the confidential source approximately three (3) pounds of methamphetamine for $3600 USD. The suspected methamphetamine was photographed and was submitted for testing. On June 6, 2024, a forensic chemist for the DEA Western Laboratory generated a report in which the methamphetamine was determined to be 97% pure (+/– 6%) for a net weight of 1329.8 grams (+- 0.2 g.).

During the investigation of this case, DEA agents noted that Defendant was operating a dark-colored 2005 Infinity QX56UT (VIN 5N3AA08C65N800699; Washington license plate number BXl2383) to at least one of the controlled purchases and later captured on Flock cameras at times material to both controlled purchases and the investigation itself. The 2005 Infinity QX56UT is registered to an individual (Alma Yadira Angulo Verduzco ("Verduzco") believed to be Defendant's "spouse" with an address reported to be 7106 Alpine Way, Yakima, Washington. Law enforcement was able to determine that Defendant resided at the 7106 Alpine Way address along with Verduzco and at least one other family member. Search warrants were obtained for the 2005 Infinity QX56UT, 7106 Alpine Way. During the execution of the search warrant on the residence, two electronics devices belonging to Defendant were seized (a white iPhone and a

PLEA AGREEMENT - 9

black TCL cell phone) for which search warrants were subsequently obtained (Defendant had communicated with the confidential source regarding the narcotics sales). The 2005 Infinity QX56UT was seized.

Additional evidence was located at the residence but Defendant was not charged with violations of law related to that evidence. Worth noting, however, was the presence of a driver's license bearing Defendant's photograph issued from the Mexican state of Sonora, identifying Defendant as "Jorge Eduardo Hernandez Ramirez" with a birthdate of September 17, 1965. Defendant has, at various times in his history, used various names, including fictitious ones, including "Antonio Ramirez Sanchez;" "Santiago Rojas Rangel;" and "Jorge Navarrete Negrete." It is believed that Defendant was born in Mexico. Defendant is undocumented / an illegal alien in the United States and has previously been deported to Mexico from the United States. He has been convicted under the names "Antonio Ramirez Sanchez," "Santiago Rojas Rangel," and "Santiago Rojas" in the past. It is unknown what Defendant's true legal name is.

11.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

12.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

PLEA AGREEMENT - 10

1          a.     <u>Base Offense Level</u>

2       The United States and the Defendant agree that the base offense level is 36

3  because the Defendant distributed between 1.5kg and 4.5kg of actual

4  methamphetamine.  U.S.S.G. § 2D1.1(c)(4).

5          b.     <u>Acceptance of Responsibility</u>

6       The United States will recommend that Defendant receive a downward

7  adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if

8  Defendant does the following:

9               i.     accepts this Plea Agreement;

10             ii.     enters a guilty plea at the first Court hearing that takes

11                    place after the United States offers this Plea Agreement;

12            iii.     demonstrates recognition and affirmative acceptance of

13                    Defendant's personal responsibility for Defendant's

14                    criminal conduct;

15            iv.     provides complete and accurate information during the

16                    sentencing process; and

17             v.     does not commit any obstructive conduct.

18      The United States and Defendant agree that at its option and on written

19 notice to Defendant, the United States may elect not to recommend a reduction for

20 acceptance of responsibility if, prior to the imposition of sentence, Defendant is

21 charged with, or convicted of, any criminal offense, or if Defendant tests positive

22 for any controlled substance.

23         c.     <u>Agreements Regarding Representations to the Court</u>

24      The United States has a duty of candor to the tribunal.  If the United States

25 and Defendant do not agree on the appropriate length of incarceration, the

26 appropriate length or applicable terms of supervised release, and/or the correct

27 guidelines calculations, variances, departures, and/or enhancements, the United

28 States reserves the right to respond to any and all arguments made by Defendant,

PLEA AGREEMENT - 11

1 on any bases the United States deems appropriate, at all stages of this criminal
2 case.

3      Defendant may make any arguments it deems appropriate, at all stages of
4 this criminal case.

5      With regard to all briefing, submissions, and hearings in this criminal case,
6 the United States and Defendant agree to the following provisions:

7           i.    The United States and Defendant may each respond to
8                 any questions from the Court or United States Probation
9                 Office;

10          ii.   The United States and Defendant may each supplement
11                the facts under consideration by the Court by providing
12                information the United States or Defendant deems
13                relevant;

14          iii.  The United States and Defendant may each present and
15                argue any additional facts that the United States or
16                Defendant believe are relevant to the Sentencing
17                Guidelines computation or sentencing;

18          iv.   The United States and Defendant may each present and
19                argue information that may already be known to the
20                Court, including information contained in the
21                Presentence Investigation Report;

22          v.    The United States and Defendant may each respond to
23                any arguments presented by the other;

24          vi.   In order to support the United States' sentencing
25                recommendation as set forth herein, the United States
26                may oppose and argue against any defense argument or
27                any recommendation for any sentence lower than the
28                sentence recommended by the United States on any basis,

including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

d.    <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

PLEA AGREEMENT - 13

e.    <u>Criminal History</u>

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

13.    <u>Incarceration</u>

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States agrees to recommend 151 months of confinement. Defendant agrees to recommend no less than 120 months of confinement.

14.    <u>Supervised Release</u>

The United States and Defendant each agree to recommend five (5) years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is,

PLEA AGREEMENT - 14

even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

      a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

      b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

      c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

15.   <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

PLEA AGREEMENT - 15

16.  <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment per count ($400 total) to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

17.  <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

18.  <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

19.  <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes, on any grounds.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes, on any grounds, so long as the Court imposes a term of incarceration consistent with this Rule 11(c)(1)(C) Plea Agreement.  Defendant further expressly agrees that if the Court indicates its intent to impose a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, Defendant has

PLEA AGREEMENT - 16

1  fourteen (14) days from the sentencing hearing to file with the Court a notice of
2  withdrawal from the Rule 11(c)(1)(C) Plea Agreement.  Defendant expressly
3  waives Defendant's right to withdraw from the Rule 11(c)(1)(C) Plea Agreement
4  more than fourteen (14) days after the Court either imposes a sentence higher than
5  the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea
6  Agreement, or indicates its intent to do so.

7      Defendant expressly waives Defendant's right to appeal any fine, term of
8  supervised release, or restitution order imposed by the Court.

9      Defendant expressly waives the right to file any post-conviction motion
10  attacking Defendant's conviction and sentence, including a motion pursuant to 28
11  U.S.C. § 2255, except one based on ineffective assistance of counsel arising from
12  information not now known by Defendant and which, in the exercise of due
13  diligence, Defendant could not know by the time the Court imposes sentence.

14      Nothing in this Plea Agreement shall preclude the United States from
15  opposing any post-conviction motion for a reduction of sentence or other attack
16  upon the conviction or sentence, including, but not limited to, writ of habeas
17  corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18      20.  <u>Withdrawal or Vacatur of Defendant's Plea</u>

19      Should Defendant successfully move to withdraw from this Plea Agreement
20  or should Defendant's conviction be set aside, vacated, reversed, or dismissed
21  under any circumstance, then:

22          a.   Any obligations, commitments, or representations made by the
23               United States in this Plea Agreement shall become null and
24               void;
25          b.   The United States may prosecute Defendant on all available
26               charges;
27          c.   The United States may reinstate any counts that have been
28               dismissed, have been superseded by the filing of another

PLEA AGREEMENT - 17

charging instrument, or were not charged because of this Plea Agreement; and

    d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

21.    <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

PLEA AGREEMENT - 18

1      <u>Approvals and Signatures</u>

2          Agreed and submitted on behalf of the United States Attorney's Office for

3   the Eastern District of Washington.

4

5   Vanessa R. Waldref
    United States Attorney

6

7   _____                    11/01/2024
                                                 _____
8   Letitia A. Sikes                             Date
    Assistant United States Attorney

9

10          I have read this Plea Agreement and I have carefully reviewed and discussed

11  every part of this Plea Agreement with my attorney. I understand the terms of this

12  Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and

13  voluntarily. I have consulted with my attorney about my rights, I understand those

14  rights, and I am satisfied with the representation of my attorney in this case. No

15  other promises or inducements have been made to me, other than those contained

16  in this Plea Agreement. No one has threatened or forced me in any way to enter

17  into this Plea Agreement. I agree to plead guilty because I am guilty.

18  Santiago Rojas                               11/01/2024
    _____                    _____
19  Antonio Ramirez Sanchez                      Date
    Defendant

20

21          I have read the Plea Agreement and have discussed the contents of the

22  agreement with my client. The Plea Agreement accurately and completely sets

23  forth the entirety of the agreement between the parties. I concur in my client's

24  decision to plead guilty as set forth in the Plea Agreement. There is no legal

25  reason why the Court should not accept Defendant's guilty plea.

26  _____                    11/1/24
                                                 _____
27  Paul S. Shelton                              Date
    Attorney for Defendant

28

PLEA AGREEMENT - 19

1

### Interpreter Certification

2

3        I hereby certify that I have read and translated the entire foregoing document

4    to Defendant in a language with which Defendant is conversant.  If questions have

5    arisen, I have notified Defendant's counsel of the questions and have not offered

6    nor given legal advice nor personal opinions.

7

8    _____ L. Fawda Gutierrez_____    Date 11/01/24
     Written Name:
     Interpreter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28